2017 WY 97

**BOARD OF PROFESSIONAL RE-SPONSIBILITY, WYOMING STATE BAR, Petitioner,**

v.

**Nick Edward BEDUHN, WSB # 6-3763, Respondent.**

D-16-0007

Supreme Court of Wyoming.

August 24, 2017

ORDER OF TWO YEAR SUSPENSION FROM THE PRACTICE OF LAW

[¶1] **This matter** came before the Court upon a "Report and Recommendation for Two Year Order of Suspension," filed herein July 13, 2017, by the Board of Professional Responsibility for the Wyoming State Bar. This Court has carefully reviewed the Report and Recommendation, the attached "Affidavit of Costs and Expenses," and the file. This Court notes that Respondent has not objected to the Report and Recommendation. *See* Rule 16(c)(2), Wyoming Rules of Disciplinary Procedure. This Court finds the Report and Recommendation should be approved, confirmed, and adopted by the Court, and that Respondent, Nick Edward Beduhn, should be suspended from the practice of law for a period of two years. It is, therefore,

[¶2] **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Two Year Order of Suspension, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶3] **ADJUDGED AND ORDERED** that, as a result of the conduct set forth in the Report and Recommendation for Two Year Order of Suspension, Respondent Nick Edward Beduhn shall be, and hereby is, suspended from the practice of law for a period of two years, with the period of suspension to begin on May 10, 2017, the date this Court entered its "Order of Immediate Suspension"; and it is further

[¶4] **ORDERED** that, during the period of suspension, Respondent shall comply with the requirements of the Wyoming Rules of Disciplinary Procedure, particularly the requirements found in Rule 21; and it is further

[¶5] **ORDERED** that, pursuant to Rule 25 of the Wyoming Rules of Disciplinary Procedure, Respondent shall reimburse the Wyoming State Bar the amount of $5,475.18, representing the costs incurred in handling this matter, as well as pay administrative fees of $3,750.00. Respondent shall pay the total amount of $9,225.18 to the Wyoming State Bar on or before November 15, 2017; and it is further

[¶6] **ORDERED** that Nick Edward Beduhn shall, on or before November 15, 2017, reimburse Tanner Beemer the amount of $1,075.85, which represents amounts paid by Mr. Beemer for legal fees and transcript costs; and it is further

[¶7] **ORDERED** that, pursuant to Rule 9(b) of the Wyoming Rules of Disciplinary Procedure, this Order of Two Year Suspension from the Practice of Law, along with the incorporated Report and Recommendation for Two Year Order of Suspension, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶8] **ORDERED** that the Clerk of this Court cause a copy of this Order of Two Year Suspension from the Practice of Law to be served upon Respondent Nick Edward Beduhn.

[¶9] **DATED** this 24th day of August, 2017.

**BY THE COURT:**
/s/ **E. JAMES BURKE**
**Chief Justice**

Attachment

BEFORE THE SUPREME COURT
STATE OF WYOMING

IN THE SUPREME COURT
STATE OF WYOMING
FILED

JUL 1 3 2017

PATRICIA BENNETT, CLERK
*[signature]*
CHIEF DEPUTY

*In the matter of*
*NICK EDWARD BEDUHN,*
*WSB No. 6-3763,*

     *Respondent.*

)
)
)
)
)

*Docket Nos. 2016-030, 2016-058,*
*2016-047, 2016-056 & 2017-003*

# D-16-0007

## REPORT AND RECOMMENDATION
## FOR TWO YEAR ORDER OF SUSPENSION

THIS MATTER came before the Board of Professional Responsibility on the 12th day of June, 2017, for a sanction hearing pursuant to Rule 14(b)(2), W.R.Dis.Proc., and the Board having received certain exhibits from Bar Counsel and testimony of witnesses, having heard the arguments of the parties and being fully advised in the premises, FINDS, CONCLUDES and RECOMMENDS as follows:

### Procedural Background

1. This disciplinary proceeding consolidates five complaints submitted to the Office of Bar Counsel between February 2016 and January 2017 regarding Respondent, who has been licensed to practice in Wyoming since 2003 and maintained, until an Order of Immediate Suspension was issued by the Wyoming Supreme Court on May 10, 2017, an active practice of law in Cody, Wyoming.

2. Prior to the Court's Order of Immediate Suspension, Respondent had a Public Defender's contract which kept him quite busy with criminal matters throughout Wyoming. He also had a general civil litigation practice consisting primarily of domestic relations matters and private-pay criminal defense.

3. The formal charge in this matter was filed and served by certified mail, return receipt requested, on March 15, 2017. The return receipt on file indicates that the formal charge was retrieved by Respondent from the Cody post office on March 23, 2017. Rule 14(a), Wyo.R.Disc.Proc., provides in relevant part, "Within 20 days after service of the formal charge, or within such greater period of time as may be approved by the BPR or a Disciplinary Judge, the respondent shall file the original of an answer to the formal charge with the BPR Clerk and shall serve a copy upon Bar Counsel." Respondent failed to file an answer or otherwise respond to the formal charge.

4. Rule 14(b)(1), Wyo.R.Disc.Proc., provides in relevant part, "If the respondent fails to file an answer within the period provided by subsection (a) of this Rule, Bar Counsel shall file a motion for default with the BPR Clerk. Thereafter, the BPR Clerk shall enter a default and the formal charge shall be deemed admitted; provided, however, that a respondent who fails to file a timely answer may, upon a showing that the failure to answer was the result of mistake, inadvertence, surprise, or excusable neglect, obtain leave of the BPR to file an answer."

5. When Respondent failed to answer or otherwise respond to the formal charge, default was entered pursuant to Rule 14(b)(1), Wyo.R.Disc.Proc., on April 20, 2017. The matter was thereafter set for a sanction hearing pursuant to Rule 14(b)(2), Wyo.R.Disc.Proc., on June 12, 2017, in Cody, Wyoming.

6. Respondent did not seek an extension of time to file an answer to the formal charge nor did he contest the entry of default.

7. The sanction hearing proceeded with opening statements by Bar Counsel and by Respondent, who was self-represented at the hearing. At the beginning of the hearing, Bar Counsel's Exhibit 1, containing Bar Counsel's investigative files in the five matters encom-

passed by the formal charge and bearing Bates numbers OBC 001 through OBC 279, was received into evidence. References hereinafter to "OBC ____" are to the corresponding Bates numbered pages of Exhibit 1.

8. Both sides called numerous witnesses to testify regarding the factors to be considered by the Board in determining the appropriate sanction for Respondent's misconduct. *See* Rule 15(b)(3)(D), Wyo.R.Dis.Proc. Respondent is a skilled trial lawyer who is generally well regarded by colleagues and judges, especially in his work as a public defender. Respondent called three witnesses to establish his character to practice criminal law as a public defender. Bar Counsel did not dispute this evidence. Respondent offered evidence of the dissolution of his law practice, single parenthood, workload through witness testimony in an attempt to mitigate the repeated failure to meet deadlines established by various courts and applicable in this disciplinary proceeding.

9. As a result of Respondent's default, the following allegation of the formal charge are deemed admitted. Their factual basis is further established in the record by the referenced Bates numbered pages of Exhibit 1, and by testimony adduced during the sanction hearing.

### No. 2016-030
### Darold Brown, Complainant

10. Respondent represented Darold Brown, the defendant in a child custody and visitation modification proceeding brought in August 2015 in the Fifth Judicial District Court in Cody. The plaintiff/ex-wife was represented by George Simonton of Cody.

11. A scheduling conference was held with Judge Cranfill on October 28, 2015. Simonton drafted a "Setting Order" following the conference and emailed it to Respondent on October 30, 2015. OBC 082. Apparently, Respondent signed the order Simonton sent and submitted it to Judge Cranfill's assistant, Rusty Hughes. Ms. Hughes contacted Simonton on Novem-

ber 3, 2015, and asked him to redo the order to conform to Judge Cranfill's format. OBC 080. Simonton prepared a revised order, this one titled, "Scheduling Order" and emailed it to Respondent on November 3, 2015. OBC 084. Both orders required Respondent to produce discovery by November 10, 2015; to list witnesses and exhibits by November 13, 2015; and set pending motions for hearing on November 17, 2015; with a trial to follow beginning December 7, 2015.

12. On November 16, 2015, having heard nothing from Respondent, Simonton sent a strong email expressing frustration with Respondent's lack of responsiveness in the case. OBC 088. On November 17, 2015, the Scheduling Order – with pertinent deadlines now expired and unmet by Respondent – was signed by Judge Cranfill and filed. OBC 005. Thereafter, Judge Cranfill signed and filed the original "Setting Order" that had been prepared by Simonton and submitted by Respondent to Judge Cranfill's assistant in early November. OBC 008.

13. On December 2, 2015, a hearing was held on multiple motions for sanctions filed by Simonton as a result of Respondent's failure to produce discovery and to comply with the Court's deadlines. Judge Cranfill ruled that Respondent "may not offer any witnesses or exhibits at trial, but may fully cross examine any of Plaintiff's witnesses." Simonton's request for attorney's fees was taken under advisement. OBC 276.

14. The trial went forward, with Judge Cranfill issuing a 10-page decision letter on January 14, 2016. OBC 010. On January 19, 2016, Simonton emailed a proposed order on the decision letter to Respondent. OBC 038. On February 2, 2016, having heard nothing from Respondent, Simonton submitted the proposed order to Judge Cranfill. OBC 036.

15. Darold Brown, Respondent's client, submitted a complaint to the Office of Bar Counsel on February 17, 2016. OBC 001. Brown alleged that he had provided Respondent with a financial affidavit and other documents, but that Respondent had neglected to provide them to

Simonton. Brown alleged, "My lawyer cost me any chance I had for a [reasonable] outcome." OBC 002. Bar Counsel sent a copy of the complaint to Respondent and asked him to respond by March 3, 2016. Respondent asked for an additional week to respond. Bar Counsel granted Respondent an extension to March 10, 2016. OBC 045. While awaiting Respondent's response, Bar Counsel began receiving emails from Brown complaining that Respondent refused to withdraw from his case so that Brown could communicate with Simonton directly. OBC 046. On March 10, 2016, Bar Counsel received an email from Respondent asking for another extension. Bar Counsel responded with the following email:

> Nick:
>
> I am very concerned about the state of your practice. I received an email from Mr. Brown late yesterday. He says he terminated your representation several weeks ago but cannot get you to withdraw from the case. Until you withdraw, George Simonton will not talk to him. He is anxious to move his case along but is stalemated by your failure to withdraw. According to Mr. Brown, your assistant told him the papers are ready for you to sign. Please get the motion filed today and, if possible, obtain Judge Cranfill's signature on the order. Please provide me with an electronic copy of the file-stamped motion and the order, and provide an electronic copy to both George Simonton and Mr. Brown. Mr. Brown's email address is DaBrown@FirstBankofWyoming.com. Please do this today.
>
> I have a new complaint from Jennifer Ribera which will go out to you in today's mail. In the past two weeks, I have received calls from Judge Cranfill and Judge Fenn regarding your neglect of client matters. It is my understanding that both judges intend to submit formal reports to me. When I have them, I will open new investigations.
>
> I strongly encourage you take immediate steps to rectify these problems, which appear to be bad and getting worse. I will grant you an extension until Monday to answer Mr. Brown's complaint, but please attend to withdrawing from his case today.
>
> Mark

OBC 047.

16.    Respondent complied with Bar Counsel's demand, filing a motion to withdraw on March 11, 2016. OBC 051. On March 15, 2016, Bar Counsel received Respondent's response to Brown's complaint. OBC 057. Respondent contended that he delivered Brown's financial information to Simonton. He viewed Judge Cranfill's decision to prohibit him from offering witnesses and exhibits as harsh and unwarranted, but said he did an outstanding job at trial, concluding, "I would submit that I excelled under the unique circumstances of this case, the odd orders, and the Court's rulings. I do not believe my performance in this case arises to a violation of our rule of professional conduct." OBC 059.

17.    Bar Counsel sent a copy of Respondent's response to Brown and invited further comments from him. OBC 073. Brown acknowledged that Respondent had done a good job in the courtroom, but complained again about his lack of responsiveness, including, most recently, his foot-dragging on the motion to withdraw. OBC 093.[1]

### No. 2016-038
### Jennifer Ribera, Complainant

18.    Beginning in 2012, Respondent represented Jennifer Ribera, who had been involved in never-ending post-decree motions and petitions following her 2006 divorce in Park County. *See Knopp v. Knopp* Docket Sheet, OBC 125 – OBC 132. Respondent eventually filed a motion for modification of child custody, child support and visitation on Ribera's behalf in August 2013. OBC 129. By that time, the case had been assigned to Judge Skar. George Simonton represented the defendant/ex-husband. The case limped along for three years, with Respondent voluntarily dismissing the 2013 petition in April 2014 and refiled it as a petition for modification of child support in July 2014. Respondent was non-compliant with discovery

---

[1] After he terminated Respondent, Brown hired new counsel to appeal Judge Cranfill's decision. On December 14, 2016, the Wyoming Supreme Court issued a decision affirming Judge Cranfill. *See* OBC 221 – OBC 225.

which led to several motions to dismiss, motions to compel and for sanctions. When Respondent failed to appear at an August 17, 2015, motion hearing, Judge Skar dismissed Ribera's petition with prejudice and awarded sanctions in the amount of $4,161.58 to Simonton's client. Simonton then filed motions for contempt, which resulted in an order of contempt being issued against Ribera in March 2016.

19.     Ribera's complaint against Respondent was received by the Office of Bar Counsel on March 7, 2016. OBC 113. Ribera complained that Respondent failed to keep her informed of the status of the case, and that she did not learn about the August 17, 2015, hearing until August 14, 2015, when Ribera received emails from Respondent's office manager requesting that Ribera complete an updated financial affidavit and transmitting interrogatories and requests for production that Ribera had not seen before. Ribera spoke with Respondent later on August 14, who told her that he had obtained a continuance of the August 17 hearing due to a scheduling conflict on his part. Ribera reported that after the August 17, 2015, telephone conversation with Respondent, she had no further contact with him until January 2016, when Ribera received a copy of Simonton's motion for contempt. During that five-month period, Ribera says she made countless attempts to contact Respondent in the form of phone calls, scheduled phone appointments and emails, all to no avail, with the exception, of a brief, unhelpful telephone conversation on November 25, 2015, described in more detail below. OBC 115.

20.     Unable to connect with her lawyer, Ribera contacted the Court on November 24, 2015, and obtained a copy of the docket sheet, which provided limited information about the case. Ribera had a brief conversation with Respondent on November 25, 2015: "[H]e said he had not had a chance to review my file was 'clueless as to any developments' and that he would call me with answers by the end of business that day ... he did not. I have not heard from him

since." Ribera also received an email from her ex "referencing a punitive judgment of over $4100.00 that was 5 days past its due date. It was the first I had heard of any judgment against me." OBC 115.

21. In February 2016 Ribera (with her mother's help, as Ribera resides in Virginia) was able to obtain copies of portions of the Court file. Ribera learned that Respondent's last-minute request for a continuance of the August 17, 2015, hearing was not granted, that her case was dismissed and that sanctions were awarded against her. She noted several missed deadlines by Respondent, and that an additional $700 in sanctions had been assessed and paid by Respondent. Ribera learned that a hearing had been set on Simonton's motion for a finding of contempt for March 7, 2016. In her March 7, 2016, complaint against Respondent, Ribera reported, "Mr. Beduhn has not answered several emails and specifically this week missed phone appointments March 3 and March 4. The office secretary had communicated to me that he knew that I had called, that there was a hearing on Monday March 7 and ensured that he had promised to call me. I did not receive any call." OBC 115 – OBC 116.

22. With her complaint, Ribera submitted several pages of emails demonstrating her unsuccessful efforts to communicate with Respondent over a period of many months. *See* OBC 116 – OBC 124.

23. On March 11, 2016, Bar Counsel sent a copy of Ribera's complaint to Respondent and asked him to respond by March 25, 2016. OBC 135. On the afternoon of March 25, 2016, Bar Counsel received an email from Respondent requesting an extension to April 8, which Bar Counsel granted. OBC 139. The month of April passed with nothing from Respondent. Meanwhile, two more complaints were received, both from District Court Judges. On May 4, 2016, Bar Counsel sent the following email:

Nick:

I am writing to follow up with you on several matters in which your response is overdue, including two complaints initiated by district court judges who were so concerned about your conduct they felt they had a duty to report it to my office. These include:

> 1. 2016-038 – by email dated March 25, 2016, you asked for an extension until April 8, 2016. The extension was granted, but I cautioned you not to request any more extensions. We have not received your response.
> 2. 2016-047 – your response was due on April 20, 2016. We have not received it.
> 3. 2016-056 – your response was due on May 2, 2016. We have not received it.

From my perspective, your conduct is harming your clients. There may be adequate explanations to some of these concerns, but you are not communicating with me. You clearly are not cooperating with my requests in multiple complaints against you. **If I do not have full responses from you in the above-listed matters by 5:00 p.m. tomorrow, May 5, 2016, I will file a motion for your immediate suspension with the Wyoming Supreme Court pursuant to Rule 17 of the Wyoming Rules of Disciplinary Procedure.**

OBC 140. Upon receipt of the foregoing email, Respondent called and asked if he could have until Monday, May 9, 2016, to respond. Bar Counsel acquiesced. *Id.*

24. In his response, Respondent complained about Judge Skar's refusal to continue the August 17, 2015, hearing due to a conflict with a hearing scheduled in a criminal matter that was pending in another court. He acknowledged he should have followed up to make sure the motion for continuance was granted. Respondent concluded his two-page response with the following:

> Ms. Ribera and myself have worked together since 2012, and it is difficult and disappointing that this case was dismissed as it had been ongoing for months. As a result I may have violated Rule 1.1, 1.3 and 1.4 of the Rules of Professional Conduct. My communication with my client was attempted to be handled through my office without my personal oversight, and I believe I may have caused prejudice to my client. Additionally, because discovery requests were not responded to in a timely manner,

and were received by opposing counsel, there was a payment of approximately $700 in legal fees. I have done everything I can at this point to assist Ms. Ribera including paying these fees, the new attorney's fees, and by setting her up with Basin Child Support to continue to pursue her modification for child support. The only thing that I can do to assist her is what I have done to this point.

OBC 142.

25. Bar Counsel sent a copy of Respondent's response to Ribera, who replied that though Respondent indicated in his response that all sanctions were paid out of his own pocket, Respondent did not actually pay the $4,161.58 judgment until after the date of Respondent's response to the bar complaint. Ribera complained that although everything was Respondent's fault and Respondent eventually paid the judgment, it is Ribera's name that appears on the contempt order. She wonders whether that finding will haunt her in future proceedings. OBC 144.

26. At this point, Bar Counsel was also investigating two complaints received from district court judges.

### No. 2016-047
### Hon. John G. Fenn, Complainant

27. On April 6, 2016, Bar Counsel received a letter from Judge Fenn reporting Respondent's failure to appear at a scheduled pretrial conference in a criminal matter on March 10, 2016. Judge Fenn called Respondent, who "took full responsibility and I accepted his explanation." Judge Fenn's complaint continues:

Ordinarily, I would not necessarily find these events to be reportable, and I am hesitant to do so under these circumstances. However, this is the second instance in which this has happened in the past year. The first was a nearly identical situation. Pursuant to the Rules of Professional Conduct Rule 8.3 comment 1, this may indicate a pattern that only a disciplinary investigation may uncover. In reporting to you, I would like to emphasize that Mr. Beduhn took full responsibility, was very respectful, and there was no detriment or prejudice to his client. I have had Mr. Beduhn appear before me on several occasions and other than these two instances, I have always found him to be adequately prepared and competent.

OBC 151.

28. In his response, Respondent said his failure to appear resulted from his staff's failure to get the scheduling conference on the calendar, which was the problem with his first missed appearance as well. He took full responsibility for missing both court appearances. OBC 159.

### No. 2016-056
### Hon. Steven Cranfill, Complainant

29. On April 12, 2016, Bar Counsel received a letter from Judge Cranfill reporting Respondent's conduct in two cases. The first was Darold Brown's case (*see* No. 2016-030 above). The second was a different custody dispute, *Northen v. Beemer*, in which Respondent represented Tanner Beemer, the father. Judge Cranfill summarized his concerns as follows:

> Both Park County cases involved divorces. Both divorces involved disputed custody. In both cases, Mr. Beduhn represented the father. In both cases, Mr. Beduhn failed to timely file a pretrial memorandum. In both cases, Mr. Beduhn was sanctioned by not allowing any witnesses other than his client to testify and no introduction of evidence. In one case, a motion to compel evidence was also pending and Mr. Beduhn consented to pay opposing counsel's fees for having to bring the motion.

> During both trials, I believe Mr. Beduhn did a good job of presenting his client's position; however, both cases resulted in primary custody being granted to the opposing party.

OBC 171.

30. In response, Respondent protested that Judge Cranfill was overly harsh in assessing sanctions in both cases. Respondent indicated that he was pursuing an appeal of the *Northen v. Beemer* decision on behalf of Beemer. As he did in Darold Brown's case, Respondent argued that he represented Beemer competently and effectively. OBC 175 – OBC 177.

31. After receiving Respondent's response, Bar Counsel obtained copies of relevant pleadings from the Court and looked in to the status of the *Northen v. Beemer* appeal. As in the *Brown v. Brown* case, Judge Cranfill had entered an order precluding Respondent from calling witnesses or offering exhibits. OBC 231. Judge Cranfill also awarded sanctions to the opposing party in the amount of $575.85. OBC 244. Respondent filed a notice of appeal on April 28, 2016, in which he stated, "Plaintiff has ordered and made proper arrangements for payment of the transcript to be prepared in this matter." OBC 258. The file also contained an affidavit dated June 29, 2016, from court reporter Barbara Morgenweck, which described her efforts to obtain a $500 down payment from Respondent to prepare the transcript, Respondent's assurance that the money was on its way and Respondent's failure to deliver on any of those assurances. OBC 260.

32. Respondent failed to follow through on paying the transcript cost, resulting in a delay in the docketing of the appeal. When the Clerk of the Wyoming Supreme Court finally docketed the matter, a due date of August 24, 2016, was established for Respondent's brief. OBC 262. On August 23, 2016, Respondent filed a motion for stay, requesting additional time for the court reporter to prepare a transcript. OBC 264. However, Respondent again failed to pay the cost of the transcript. On September 7, 2016, Chief Justice Burke issued an order denying Respondent's motion for stay, stating, "This Court finds any delay in production of the transcript at issue was caused by [Respondent], who failed to timely follow through on paying the court reporter for the transcript." Respondent was ordered to file his brief on or before September 8, 2016. OBC 273. Respondent failed to do so, resulting in an "Order Dismissing Appeal for Want of Prosecution" being issued on September 9, 2016. OBC 274.

No. 2017-003
Tanner Beemer, Complainant

33.    On January 4, 2017, a fifth complaint was received – this one from Tanner Beemer, Respondent's client in the *Northen v. Beemer* case. Beemer's complaint provided new and very troubling information as to the extent of Respondent's mishandling of his case. Quoting from the complaint (with numerous typos corrected):

> Mr. Beduhn did not turn in my discovery by the deadline, or the extended deadline. The deadline for discovery appears to me to have been January 6[th], which my attorney did not even attempt to get the documents in by then. Through my documents I see that they were submitted February 2[nd] of 2015, a day after opposing counsel [Tom Keegan] filed a motion to preclude them. This is the motion that created extra fees that I eventually had to pay, not through fault of my own, but from the negligence of my attorney. I had no witnesses or evidence in trial, just my own testimony; when the judge informed us, or I found out about this, my attorney assured me that it would have no bearing on the trial or the outcome, that my testimony would be enough. I was very unfamiliar with the process, and what to expect from the system and/or my attorney, but as the process has played out, I have come to see just how misrepresented I was throughout the entire process. And that discovery and having witnesses and evidence are extremely important.
>
> [Mr. Beduhn] also created more work for the opposing attorney by never turning over documents, which caused the [sanctions] of $575.85. Mr. Beduhn said he would pay these fees; however, he never did. I received a notice of contempt of court for not paying those fees, so I went to Mr. Keegan's office and paid them.
>
> Mr. Beduhn has not talked to me or returned calls in months. The last time he has contacted me was Monday July 25[th]. This was to let me know that intent to appeal had been filed. Since then, no answering phone calls or repeated inquiries to staff to inform me on status of case, including multiple inquiries for a bill. After months of no work, I called the Wyoming Supreme Court clerk to check on the status of my appeal, and I was informed that my case closed September 15 due to another missed deadline.

OBC 193.

34. Bar Counsel sent Beemer's complaint to Respondent and asked him to respond by January 20, 2017. On January 18, 2017, Respondent sent Bar Counsel an email requesting an extension to January 24. Bar Counsel acquiesced. OBC 197.

35. In his response, Respondent acknowledged that he had agreed to pay the Court-ordered sanctions in the amount of $575.85 "to protect his client." According to Respondent, "Without my knowledge, Mr. Beemer then went to Mr. Keegan's office directly to pay these fees. This was unknown to me until after it occurred. These fees would have been paid out of pocket." OBC 199. Respondent minimized the impact of the order precluding him from calling witnesses or offering exhibits, stating, "While we were hamstrung by having limited witnesses and exhibits, Mr. Beemer received a fair trial and process." *Id.* Respondent concluded, "I feel that I have not violated rules 1.1, 1.3 or 1.4 in his [sic] regard." OBC 200.

36. Bar Counsel sent Beemer a copy of Respondent's response and asked him to comment. His reply indicated among other things that he made a $500.00 payment to enable Respondent to order the trial transcript for purposes of the appeal, and that he heard nothing from Respondent after late July 2016. OBC 204.

37. Bar Counsel sent Beemer's reply to Respondent with the following questions:

Nick:

I am forwarding Tanner Beemer's reply to your response. I have two questions:

1. Do you dispute that Mr. Beemer paid $500 toward the transcript, but it was never obtained?
2. Do you dispute that you had no communications with Mr. Beemer after July 27, 2016? If so, please provide details about your communications, along with any relevant documents.

I would appreciate your written response to these questions, along with any additional information you would like me to consider, by **Friday, February 17, 2017.**

OBC 206.

38. Respondent emailed on Friday, February 17, 2017, and requested an extension until Monday, February 20. Bar Counsel acquiesced. OBC 208. Bar Counsel finally received his response on Wednesday, February 22. Respondent said the $500.00 payment was for legal fees, and that Beemer still owed him approximately $2,500.00. He said his time records indicate that he met with Beemer on August 16, 2016, and August 22, 2016. OBC 214.

39. Bar Counsel sent Respondent's response to Beemer. He wrote back, denying that he owed Respondent anything more for legal fees and reiterating that the $500.00 payment was specifically to enable Respondent to obtain the trial transcript for purposes of the appeal. OBC 219. He provided a copy of the cancelled check. OBC 220. In comparing the cancelled check with the aforementioned affidavit of the court reporter (OBC 260), the following timeline emerges:

| | |
|---|---|
| 4/29/2016 | Respondent files notice of appeal. |
| 5/11/2016 | Court reporter emails Respondent asking for $500.00 down payment. |
| 5/12/2016 | Respondent calls and says he will bring a check this afternoon. |
| 5/23/2016 | Date on Beemer's $500.00 check to Respondent. |
| 5/26/2016 | Respondent deposits check to the account of Respondent's law firm. |
| 5/26/2016 | Court reporter sends follow up email to Respondent inquiring about payment. |
| 5/26/2016 | Respondent emails court reporter and says he will bring the check. He never does. |

*See* OBC 260, *cf.* OBC 220.

40. Mr. Beemer testified that the check was for payment of the transcript to appeal the decision. Respondent accepted the check from Beemer, deposited it, but never paid for the transcript. Respondent never told Beemer the appeal was dismissed.

41. The formal charge alleged the following rules violations by Respondent that were deemed admitted by the failure of Respondent to file a timely response:

| Complaint | Complainant | Rules Deemed Violated |
|---|---|---|
| 2016-030 | Darold Brown | Rule 1.1 (competence)<br>Rule 1.3 (diligence)<br>Rule 1.4 (communication with client)<br>Rule 1.16 (termination of representation) |
| 2016-038 | Jennifer Ribera | Rule 1.1 (competence)<br>Rule 1.3 (diligence) |
| 2016-047 | Hon. John G. Fenn | Rule 1.3 (diligence) |
| 2016-056 | Hon. Steven Cranfill | Rule 1.1 (competence)<br>Rule 1.3 (diligence)<br>Rule 1.4 (communication with client)<br>Rule 1.15 (lawyer trust account) |
| 2017-003 | Tanner Beemer | Rule 1.1 (competence)<br>Rule 1.3 (diligence)<br>Rule 1.4 (communication with client)<br>Rule 1.15 (lawyer trust account) |

Moreover, the violations are amply supported by the exhibits and testimony received into evidence at the hearing.

### Determination of the Appropriate Sanction

42. The categories of lawyer discipline are set forth in Rule 9(a): Forms of discipline. Any of the following forms of discipline may be imposed in those cases where grounds for discipline have been established:

(1) Disbarment. Disbarment is the revocation by the Court of an attorney's license to practice law in this state, subject to reinstatement as provided in Rule 22. Disbarment shall be for five years.

(2) Suspension. Suspension is the temporary suspension by the Court of an attorney's license to practice law in this state, subject to reinstatement as provided in Rule 22. Suspension, which may be stayed in whole or in part at the discretion of the Court when probation is imposed, shall be for a definite period of time not to exceed three years.

(3) Public censure. Public censure is an order of the Court censuring an attorney's misconduct but not limiting the attorney's right to practice law.

(4) Private reprimand. Private reprimand is an order from the ROC or the BPR admonishing an attorney for misconduct.

43. Rule 15(b)(3)(D) lists the factors to be considered in determining lawyer sanctions: In imposing a sanction after a finding of misconduct by the respondent, the BPR shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions:

(i) Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;

(ii) Whether the lawyer acted intentionally, knowingly, or negligently;

(iii) The actual or potential injury caused by the lawyer's misconduct; and

(iv) The existence of any aggravating or mitigating factors.

44. The Board determines by a majority of a quorum that there were violations of duties owed to the Respondent's clients, the legal system and the profession. The Board determines that Respondent acted with knowledge. When the lawyer acts with conscious awareness of the nature or attendant circumstances of his conduct both without the conscious objective or purpose to accomplish a particular result. Further the Board finds that Respondent inflicted serious injury upon his clients (e.g., the dismissal of Ms. Ribera's petition and the assessment of sanctions against her; the inability of Mr. Brown and Mr. Tanner to call witnesses or introduce exhibits in support of their cases; the assessment of legal fees against Mr. Beemer) and upon the legal system (i.e., the delays and expense caused by the filing of motions necessitated by Respondent's misconduct). Respondent is also found to have engaged in a pattern of misconduct prejudicial to his clients as well as the administration of justice as alleged in paragraph 37 of the formal charge that states: "In addition, the pattern of misconduct described above resulted in delays,

unnecessary motions and other wasteful expenditures of time, money, and the Court's resources. Respondent's actions (and failures to act) in multiple matters also constitutes conduct prejudicial to the administration of justice in violation of Rule 8.4(d)."

45. Respondent's violation of Rule 1.15 (lawyer trust accounts) falls within Standard 4.1, "Failure to Preserve the Client's Property". "Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases where the lawyer engages in fraud, deceit, or misrepresentation directed toward a client:

> 4.11 Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.
>
> 4.12. Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.
>
> 4.13 [Public censure] is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.
>
> 4.14 [Private reprimand] is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client.

46. In misappropriating the $500.00 payment from Tanner Beemer and not utilizing it for its intended purpose as a down payment for the hearing transcript, Respondent knew or should have known that he was dealing improperly with client property and caused injury to the client for which, absent aggravating or mitigating circumstances, suspension would be the appropriate sanction. See ABA Standard 4.1, "Failure to Preserve the Client's Property," infra.

47. Misconduct of the sort engaged in by Respondent, which essentially involves violation of a duty owed to a client, is addressed in ABA Standard 4.4, "Lack of Diligence." Absent

aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving failure to provide competent representation to a client:

4.41    Disbarment is generally appropriate when:

(a)    a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

(b)    a lawyer knowingly fails to perform services for a client and causes injury or potentially serious injury to a client;

(c)    a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

4.42    Suspension is generally appropriate when:

(a)    a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or

(b)    a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

4.43    Reprimand [i.e., "public censure" under Rule 9(a)(3) of the Wyoming Rules of Disciplinary Procedure] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.

4.44    Admonition [i.e., "private reprimand" under Rule 9(a)(4) of the Wyoming Rules of Disciplinary Procedure] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes little or no actual or potential injury to a client.

48.    In considering the duties breached by Respondent in the misconduct described above, the Board finds that Respondent knowingly failed to remit the $500 for the transcript, engaged in a pattern of neglect with respect to client matters and caused serious injury to his clients for which, absent aggravating or mitigating circumstances, disbarment would be the appropriate sanction. *See* ABA Standard 4.4, "Lack of Diligence," *infra.*

49. After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose. The Board finds the following aggravating factors:

a. Pattern of misconduct.
b. Multiple offenses
c. Vulnerability of the victims.
d. Substantial experience in the practice of law.

The Board finds the following mitigating factors:

a. Absence of a prior disciplinary record.
b. Absence of a dishonest or selfish motive.
c. Character and reputation.

50. Respondent urged the Board in his opening and closing remarks to find as an additional mitigating factor the personal challenges he has faced in recent years, including the loss of his partner, Ernest J. Goppert, who passed away March 19, 2014; a 500% increase in office rent following Mr. Goppert's death; Respondent's heavy Public Defender caseload; loss of staff; and the fact that he is a single parent left to raise his two children without assistance from their birth mothers. Respondent's witnesses corroborated many of the statements in their testimony. Respondent pointed to his successes, his death penalty certification and how others adversely impacted his abilities to succeed. Although the Board empathizes with these challenges, the Board does not find that they rise to the level of "personal or emotional problems" as that term is used in ABA Standard 9.0.

51. Considering all of these factors, the Board finds that an appropriate sanction for Respondent's misconduct is that he be suspended from the practice of law for a period of two (2) years; that he be required to reimburse Mr. Beemer for legal fees assessed and paid by him in the amount of $575.85 and $500.00 paid for a down payment on the hearing transcript, for a total reimbursement of $1,075.85; that he be required to pay an administrative fee of $750.00 as pro-

vided in Rule 25(b), Wyo.R.Disc.Proc.; and that he be required to reimburse the Wyoming State Bar for certified costs of this proceeding as provided in Rule 25(e), Wyo.R.Disc.Proc.

<u>Conclusions of Law</u>

52. Rule 6(c)(4), Wyo.R.Disc.Proc. provides, "When misconduct has been proved by clear and convincing evidence at a hearing, *or misconduct has been established by default*, [the BPR shall] issue a private reprimand or recommend an appropriate public discipline to the Court" [italics supplied].

53. Rule 14, Wyo.R.Disc.Proc., "Answer to Formal Charge — Filing, Failure to Answer, Default," provides:

(a) *Answer.* Within 20 days after service of the formal charge, or within such greater period of time as may be approved by the BPR or a Disciplinary Judge, the respondent shall file the original of an answer to the formal charge with the BPR Clerk and shall serve a copy upon Bar Counsel. In the answer the respondent shall either admit or deny every material allegation contained in the formal charge, or request that the allegation be set forth with greater particularity. In addition, the respondent shall set forth in the answer any affirmative defenses. Any objection to the formal charge which a respondent may assert, including a challenge to the formal charge for failure to charge misconduct constituting grounds for discipline, must also be set forth in the answer.

(b) *Failure to answer; default; failure to appear.*

(1) If the respondent fails to file an answer within the period provided by subsection (a) of this Rule, Bar Counsel shall file a motion for default with the BPR Clerk. Thereafter, the BPR Clerk shall enter a default and the formal charge shall be deemed admitted; provided, however, that a respondent who fails to file a timely answer may, upon a showing that the failure to answer was the result of mistake, inadvertence, surprise, or excusable neglect, obtain leave of the BPR to file an answer.

(2) Notwithstanding the entry of a default, Bar Counsel shall give the respondent notice of the sanction hearing, at which Bar Counsel and the respondent may appear and present

evidence and arguments to the BPR regarding the form of discipline to be imposed. Thereafter the BPR shall conduct a sanction hearing and submit its report and recommendation to the Court as provided in Rule 15.

(3) If the respondent should fail to appear when specifically so ordered by the BPR, the respondent shall be deemed to have admitted the factual allegations which were to be the subject of such appearance and/or to have conceded any motion or recommendations to be considered at such appearance. The BPR shall not, absent good cause, continue or delay proceedings due to the respondent's failure to appear.

54. Rule 15(b)(3)(D), Wyo.R.Disc.Proc., lists the factors to be considered in determining lawyer sanctions:

(D) In imposing a sanction after a finding of misconduct by the respondent, the BPR shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions:

(i) Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;

(ii) Whether the lawyer acted intentionally, knowingly, or negligently;

(iii) The actual or potential injury caused by the lawyer's misconduct; and

(iv) The existence of any aggravating or mitigating factors.

55. The American Bar Association's "Standards for Imposing Lawyer Sanctions" (hereinafter referred to as the "ABA Standards") state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession." ABA Standard 3.0 lists the factors to

be considered in imposing a sanction after a finding of lawyer misconduct, and mirrors the language of Rule 15(b)(3)(D), W.R.D.P.:

    (a)    the duty violated;

    (b)    the lawyer's mental state;

    (c)    the potential or actual injury caused by the lawyer's misconduct; and

    (d)    the existence of aggravating or mitigating factors.

56.    Respondent's violation of Rule 1.15 (lawyer trust accounts) with respect to his handling of Mr. Beemer's $500 down payment for the hearing transcript falls within Standard 4.1, "Failure to Preserve the Client's Property":

> Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases where the lawyer engages in fraud, deceit, or misrepresentation directed toward a client:
>
> 4.11    Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.
>
> 4.12.    Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.
>
> 4.13    [Public censure] is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.
>
> 4.14    [Private reprimand] is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client.

57.    Misconduct of the sort engaged in by Respondent, which essentially involves violation of a duty owed to a client, is addressed in ABA Standard 4.4, "Lack of Diligence."

> Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally

appropriate in cases involving failure to provide competent representation to a client:

4.41 Disbarment is generally appropriate when:

(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

(b) a lawyer knowingly fails to perform services for a client and causes injury or potentially serious injury to a client;

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

4.42 Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

4.43 Reprimand [i.e., "public censure" under Rule 9(a)(3) of the Wyoming Rules of Disciplinary Procedure] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.

4.44 Admonition [i.e., "private reprimand" under Rule 9(a)(4) of the Wyoming Rules of Disciplinary Procedure] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes little or no actual or potential injury to a client.

58. <u>The Lawyer's Mental State.</u> The preamble to the ABA Standards includes the following discussion regarding mental state:

> The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a

particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

59. The Potential or Actual Injury Caused by the Lawyer's Misconduct. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

60. Aggravating and Mitigating Factors. ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

9.1 *Generally*

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2 *Aggravation*

9.21 *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

9.22 *Factors which may be considered in aggravation.* Aggravating factors include:

(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of the victim;

(i) substantial experience in the practice of law;

(j) indifference in making restitution; and

(k) illegal conduct, including that involving the use of controlled substances.

9.3     *Mitigation*

9.31    *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32    *Factors which may be considered in mitigation.* Mitigating factors include:

(a) absence of a prior disciplinary record;

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:
  (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
  (2) the chemical dependency or mental disability caused the misconduct;
  (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
  (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse; and

(m) remoteness of prior offenses.

61.  "Personal or Emotional Problems" as a Mitigating Factor.  A lawyer's "personal or emotional problems," in order to qualify as a mitigating factor, must be of a different character than what was presented to the Board by Respondent as the misconduct.  *See, e.g., In re Hyde*, 950 P.2d 806 (N.M. 1997) (pressures of practice of law provide neither excuse nor mitigating factor for deceit and dishonest conduct; indefinite suspension warranted for lawyer who submitted false billing statements for legal work he did not perform, neglected interests of his clients, and misrepresented work he performed); *Statewide Grievance Comm. v. Johnson*, 2006 WL 3359731 at *4 (Conn. Super. Ct. 2006) (evidence that lawyer was distracted due to personal circumstances of pending grievance proceeding and notice of suspension did not excuse what appeared to be entrenched pattern of inattention to ethical considerations and inability to properly manage her law practice; "[i]t is this entrenched pattern which is deeply disturbing to the court and justifies a period of suspension"); *In re Rumsey*, 71 P.3d 1150, 1163 (Kan. 2003) (one-year suspension for incompetence and commingling client funds, among other violations; while lawyer's wife began chemotherapy at about same time of misconduct, "[t]his case does not present exceptional circumstances with persuasive mitigating factors [and respondent's] lengthy experience as an attorney and his repeated violations of the same professional rules belie his contention that these violations are a one-time occurrence related to the stress of his wife's illness").

62.  With respect to costs of disciplinary proceedings, Rule 25, Wyo.R.Disc.Proc., provides:

### Rule 25.  Expenses and Costs.

(a)  The expenses of members of the BPR, the ROC, Bar Counsel, and Special Bar Counsel, costs of a Disciplinary Judge, and other expenses incurred in the implementation or administration of these rules, shall be paid with funds allocated for that purpose by the Wyoming State Bar. The Wyoming State Bar shall compensate and pay the expenses of Disciplinary Judges.

(b)     In addition to any costs assessed by the BPR, the ROC or the Court, an administrative fee of seven hundred fifty dollars ($750.00) shall be imposed by the BPR in all cases where private discipline, diversion, or public discipline is ordered.   The administrative fee shall be assessed on a per-complaint basis.

(c)     "Costs" means actual expenses incurred by Bar Counsel, the ROC, the BPR, and the Wyoming State Bar in connection with a disciplinary proceeding, reinstatement proceeding or diversion program; including without limitation the cost of depositions used in a proceeding, hearing transcripts, copying costs, conference call and other telephone expenses, fees for service of process and subpoenas, witnesses fees, fees paid to expert witnesses, and costs associated with travel, meals and lodging for the ROC, the BPR, the BPR Clerk and the Office of Bar Counsel.

(d)     When an attorney is privately disciplined, the BPR or the ROC may assess against the attorney the costs incurred in connection with the investigation and disciplinary proceeding, together with the administrative fee.

(e)     When public discipline is recommended by the BPR, it shall certify to the Court the costs incurred in connection with the investigation and disciplinary proceeding, together with the administrative fee. The BPR may recommend to the Court the assessment of those costs and, if the Court imposes discipline, the Court may assess all or any part of the certified costs, together with the administrative fee, against respondent.

(f)     In any case where costs and fees are assessed, they shall be paid to the Wyoming State Bar.

### Recommendation

Based upon the foregoing findings and conclusions, the Board recommends that the Court issue an order suspending Respondent for a period of two (2) years, with the period of suspension to begin May 10, 2017, the date of the Court's Order of Immediate Suspension; that Respondent be required to reimburse Mr. Beemer for legal fees assessed against him and paid by Mr. Beemer in the amount of $575.85 and for the $500.00 paid by Mr. Beemer for a down payment on the hearing transcript, for a total reimbursement to Mr. Beemer of $1,075.85.

It is further recommended Respondent be required to pay an administrative fee. The administrative fee of $750 "shall be assessed on a per complaint basis under Rule 25 (b)." Wyo.R.Disc.Proc. There were five written complaints made to the Office of Bar Counsel that results in an Administrative fee of $3,750.[2] In addition to the Administrative fee it is recommended Respondent be required to reimburse the Wyoming State Bar for certified costs of this proceeding as provided in Rule 25(e), Wyo.R.Disc.Proc in the amount of $5,475.18.

DATED this ___11___ day of July, 2017.

Judith A.W. Studer, Chair
Board of Professional Responsibility
Wyoming State Bar

---

[2] This Board notes that five complaints were received by Bar Counsel from three clients of Respondent and two judges. There is duplication as to the allegation of misconduct as one judge reported on matters covered by complaints made by clients. The term "complaint" is defined in the Wyoming Rules of Disciplinary Procedure, Rule 2 (f) Wyo.R.Disc.Proc. as "any written allegation of attorney misconduct. Under Rule 25(e) Wyo.R.Disc.Proc., the Court has discretion to determine the appropriate amount to be assessed for an Administration fee.